UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hearth & Home Technologies, Inc.<br><br>Plaintiff,<br><br>v.<br><br>J & M Distributing, Inc.<br><br>Defendant. | Case No. 12-cv-00686 (SRN/TNL)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Kelly W. Hoversten and Quentin R. Wittrock, Gray Plant Mooty Mooty & Bennett, PA, 80 South 8th Street, Suite 500, Minneapolis, MN 55402, for Plaintiff.

George G. Eck, Jaime Stilson, Kathryn Johnson, Dorsey & Whitney LLP, 50 South 6th Street Suite 1500, Minneapolis, MN 55402-1498; Ray C. Stoner, Jackson Kelly PLLC, Three Gateway Center, 401 Liberty Avenue, Suite 1340, Pittsburgh, PA 15222, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter came before the Court on Defendant J & M Distributing, Inc.'s ("J&M") Motion to Dismiss (Doc. No. 8) and alternative Motion to Transfer Venue (Doc. No. 14.) For the reasons that follow, Defendant's motions are denied.

## II. BACKGROUND

Plaintiff Hearth & Home Technologies, Inc. ("HHT") is a corporation organized under the laws of the State of Iowa, with its principal place of business in Lakeville, Minnesota. (Compl., Doc. No. 1, ¶¶ 4, 1.) HHT is a leading manufacturer of gas, electric, and wood-burning fireplaces, inserts, stoves, and related products. (J&M's Mem. of Law in

1

Supp. of Mot. to Dismiss, Doc. No. 10 ("J&M's Dismissal Mem."), at p. 2.) Defendant J&M is a corporation organized under the laws of the State of West Virginia, with its principal place of business in Wheeling, West Virginia. (Compl. ¶ 5.) Around 1987, HHT began selling its products to J&M and authorized J&M to redistribute its products in West Virginia, western Pennsylvania, Ohio, and western Maryland. (Id. ¶ 9.)[1] Over the last twenty-five years, J&M's business has been devoted exclusively to distributing the products of HHT or its predecessor organizations. (Aff. of James Kleeh, Doc. No. 18 ("Kleeh Aff."), ¶ 2.)

On May 27, 2011, J&M sent HHT a letter stating that it had retained counsel "to investigate and analyze recent conduct by [HHT] from an anti-trust, unfair competition and contractual perspectives [sic]." (Decl. of Quentin Wittrock, Doc. No. 13 ("Wittrock Decl."), ¶ 2, Ex. 1.) In the May 27, 2011 letter, J&M accused HHT of engaging in a plan to undercut J&M's business by, among other things: (1) violating the Robinson-Patman Act by attempting to sell directly to J&M's customers to undercut its sales; (2) placing J&M in a competitive disadvantage by refusing to allow drop shipments, increasing freight fees, limiting orders, delivering products in an untimely manner, and withholding or delaying co-op sales money, warranty claim payments, and credits; (3) denying J&M the benefit of HHT's customer leads and coupon marketing program; and (4) charging higher fees and offering lower discounts to J&M than to other distributors. (Id.)

---

[1] A prior but expired written Distributorship Agreement between HHT and J&M provided that "any dispute of fact or law or any claim in anyway relating to or arising out of [the contract]" would be heard exclusively in the federal or state courts located in Hennepin County, Minnesota. (Decl. of Quentin Wittrock, Doc. No. 13, Ex. 4 § 8.2.)

2

After HHT received the May 27, 2011 letter, the parties participated in a meeting in Pittsburgh, Pennsylvania. (Wittrock Decl. ¶¶ 3–4, Ex. 2.) In an October 4, 2011 letter sent after that meeting, J&M's counsel provided "a list of matters that [would] need to be resolved." (Id. ¶ 4, Ex. 2.) The issues raised included, but were not limited to: (1) possible Robinson-Patman Act pricing violations; (2) shipping rate issues; (3) delays in deliveries; (4) information regarding how coupons and leads are provided to distributors; (5) discounts provided to other distributors; and (6) communication problems. (See id.)

After multiple phone calls between J&M's counsel and HHT's counsel, J&M's President, Jim Kleeh, sent HHT a letter on March 16, 2012. (HHT's Mem. of Law in Opp'n to J&M's Mot. to Dismiss, Doc. No. 12 ("HHT's Dismissal Opp'n Mem."), at p. 4; Wittrock Decl. ¶ 5, Ex. 3.) J&M criticized the services provided by HHT and alleged that HHT was favoring another distributor over it. (Id.) Specifically, J&M's counsel stated that "I know you are not treating other distributors the same as you treat J&M, this could have grave circumstances in the near future." (Id.) J&M also alleged that HHT was not providing them with online coupon leads, was failing to adequately communicate with it, and was providing poor customer service to J&M. (Id.) J&M concluded the letter by stating that "[t]his situation needs to be remedied immediately." (Id.)

HHT wrote J&M a letter on March 19, 2012, providing notice that its buying and redistribution relationship would end on May 31, 2012. (Compl. ¶ 13.) That same day, HHT filed the present action seeking a declaratory judgment: (1) ratifying and enforcing the termination of the parties' distribution relationship; and (2) declaring that HHT did not violate J&M's rights or applicable law during the term of that relationship. (Id. at p. 5.)

3

On May 3, 2012, J&M filed a motion to dismiss HHT's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. No. 8.) On May 22, 2012, J&M filed suit in the United States District Court for the Northern District of West Virginia, Civil Action No. 5:12-cv-00069-JPB, against HHT and a distributor J&M believed HHT was favoring over it, alleging a "campaign . . . to sabotage sales by J&M." (Wittrock Decl. ¶ 6, Ex. 5 ¶¶ 31, 55.) The distributor named in the West Virginia action is a Pennsylvania company licensed to do business in West Virginia and is a competitor of J&M. (Decl. of George Eck in Supp. of Mot. to Transfer Venue, Doc. No. 17 ("Eck Decl."), ¶ 3, Ex. B.) J&M's West Virginia action alleges breach of contract, tortious interference with business relations, unfair competition, civil conspiracy, and violations of the Sherman and Robinson-Patman Act. (Wittrock Decl. ¶ 6, Ex. 5 ¶¶ 57–106.)

### III. DISCUSSION

#### A. Subject Matter Jurisdiction under the Declaratory Judgment Act

J&M argues that subject matter jurisdiction is lacking as to HHT's claim for declaratory relief against it because HHT fails to state a case or controversy. (J&M's Dismissal Mem. at p. 3.) A Federal Rule of Civil Procedure 12(b)(1) motion requires the Court to examine whether it has the authority to decide the case. Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008). It is the plaintiff's burden to establish that jurisdiction exists. Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). In resolving a 12(b)(1) motion, the Court is not limited to a consideration of the face of the complaint, but may also consider evidence submitted by the parties. Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980).

The Declaratory Judgment Act confers on federal courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts, however, only have jurisdiction to hear actual cases and controversies. Cnty. of Mille Lacs v. Benjamin, 361 F.3d 460, 463 (8th Cir. 2004) (citing U.S. Const. art. III, § 2, cl. 1). The Supreme Court in MedImmune, Inc. v. Genentech, Inc., addressed the standard for evaluating whether a declaratory judgment claim states a case or controversy. 549 U.S. 118, 127 (2007). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. (quotation omitted and alteration in original). In short, "'the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). Federal courts have "regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1, 19 (1983).

J&M's primary argument is that HHT's Complaint amounts to a race to the courthouse and impermissible forum shopping. (J&M Dismissal Mem. at p. 7.) J&M also argues that HHT's Complaint raises mostly factual—not legal—issues that are not

5

appropriate for the Court to decide in a declaratory judgment action. (Id.) HHT responds that because J&M filed a lawsuit in the Northern District of West Virginia "[b]oth sides clearly agree—and their acts of filing complaints demonstrate—that there is a real, immediate, and justiciable dispute concerning the parties' conduct leading up to and resulting in J&M's termination as a [HHT] distributor." (HHT Dismissal Opp'n Mem. at p. 6.)

The Court agrees. Subject matter jurisdiction exists over the claims asserted by HHT under the Declaratory Judgment Act. The facts alleged in HHT's Complaint demonstrate that there a substantial and real controversy between J&M and HHT regarding whether HHT had the ability to terminate its business relationship with J&M. HHT has also demonstrated a "sufficient immediacy and reality to warrant the issuance of a declaratory judgment" as J&M sent HHT three letters alleging that HHT violated the Sherman and Robinson-Patman Acts. Moreover, on May 22, 2012, J&M filed a Complaint against HHT in the Northern District of West Virginia alleging violations of those Acts as well as breach of contract, tortious interference with business relations, and civil conspiracy. In sum, the Court finds that there is a live case or controversy between the parties that is capable of adjudication by the Court based on the totality of all of the circumstances. Therefore, J&M's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. Discretion to Dismiss HHT's Declaratory Judgment Claims

J&M next argues that the Court, in its discretion, should dismiss HHT's Complaint even if the Court finds that subject matter jurisdiction exists. (J&M's Dismissal Mem. at pp. 10–11.) District courts possess discretion in deciding whether and when to hear claims

6

under the Declaratory Judgment Act "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). "District courts are not obligated to assume jurisdiction of declaratory judgment actions and may stay or dismiss such claims in their discretion." Rexam, Inc. v. United Steelworkers of Am., No. 03-2998, 2003 WL 22477858, at *2 (D. Minn. Oct. 30, 2003) (citation omitted). In exercising this discretion, district courts weigh whether the action was brought as a wrongful preemptive strike or as an attempt at forum shopping. See id. (citing Verizon Commc's, Inc. v. Inverizon Int'l, Inc., 295 F.3d 870, 874–75 (8th Cir. 2002); BASF Corp. v. Symington, 50 F.3d 555, 558 (8th Cir. 1995).

No evidence in the record suggests that HHT brought a wrongful preemptive strike or engaged in forum shopping. HHT did not deceive J&M into believing that it would not initiate litigation if the parties were unable to reach an agreement regarding their commercial relationship. Moreover, the fact that J&M did not filed its Complaint in West Virginia for over two months after HHT filed this action demonstrates that HHT was not racing to the courthouse in an attempt to file suit before J&M could do the same. Minnesota is the location of HHT's principal place of business and thus a natural forum for it to file its lawsuit against J&M. A prior but expired written Distribution Agreement between the parties stated that "any dispute of fact or law or any claim in anyway relating to or arising out of [the contract]" would be heard in federal or state courts located in Hennepin County, Minnesota. (Wittrock Decl., Ex. 4 § 8.2.) While this agreement is expired, it demonstrates that the parties had contemplated Minnesota as a proper forum to preside over its disputes.

In addition, when faced with two identical actions pending in different jurisdictions,

7

courts must consider several additional factors in determining whether to dismiss a Declaratory Judgment action in its discretion, including: (1) whether there is a parallel state proceeding; (2) whether the action raises questions of federal law; and (3) when the parties filed the actions. Rexam, 2003 WL 22477858, at *2, *4. Courts have greater discretion to stay or dismiss declaratory judgment claims when there is a parallel state proceeding or when there are no federal questions raised. Id. (citing Wilton, 515 U.S. at 282, 290; Brillhart v. Excess Ins. Co., 316 U.S. 491, 494–95 (1992); Verizon, 295 F.3d at 873–75). Here, J&M's parallel federal action alleges claims based on the Sherman and Robinson-Patman Acts. Because both lawsuits are in federal courts and raise federal questions, the Court has less discretion to dismiss HHT's Minnesota lawsuit. Rexam, 2003 WL 22477858, at *4. Therefore, these factors weigh against dismissal.

The Court next considers whether the West Virginia and Minnesota lawsuits involve the same parties and legal issues. If the parties litigate the same questions in two federal jurisdictions, dismissal of one action may be warranted for reasons of judicial economy and practicality. Reexam, 2003 WL 22477858, at *4. Both the suit initiated by HHT and the one filed by J&M address J&M's allegations that HHT violated federal law and improperly harmed J&M's business by terminating its commercial relationship. The fact that J&M's suit in West Virginia includes an additional party—a Pennsylvania-based distributor of HHT—does not alter the fact that both cases involve the same legal and factual issues. Therefore, this factor does not weigh in favor of dismissal.

The last factor considers the timing of the filing of the two actions. Because the parties filed nearly identical cases in different federal courts, the Court must analyze this

8

factor under the first-filed rule. It is well established that in cases of "concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir.1985). This principle is known as the "first-filed rule." See id. The first-filed rule is not "rigid, mechanical, or inflexible" and the court applies it to serve the interests of justice. Id. It exists "[t]o conserve judicial resources and avoid conflicting rulings" and absent compelling circumstances, "the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). Duplicative litigation in the federal courts should be avoided to prevent the unnecessary expenditure of scarce judicial resources. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

"The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." Nw. Airlines, 989 F.2d at 1005 (citation and internal quotation marks omitted). The Eighth Circuit has noted "red flags," however, circumstances that may justify a court's refusal to apply the first-filed rule. They include: (1) a race to the courthouse by the first-filed party to preempt a suit by the second-filed party when they were on notice that the second-filed party was going to imminently file suit; and (2) the fact that the first-filed party's suit was for declaratory judgment. See, e.g., Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999); Nw. Airlines, 989 F.2d at 1007; Clergy Fin., LLC v. Clergy Fin. Servs., Inc., 598 F. Supp. 2d 989, 994 (D. Minn. 2009). Even if both "red flags" are present, however, "[i]n

9

the absence of bad faith, the mere presence of 'red flags' does not necessarily warrant setting aside the first-to-file rule." Riedell Shoes, Inc. v. Adidas AG, No. 11-251, 2011 WL 1868180, at *5 (D. Minn. May 16, 2011). Indications of bad faith may include a plaintiff: (1) filing a suit in an unnatural forum; (2) lulling the opposing party into thinking he would not file a lawsuit; or (3) "secretly fil[ing] the first-filed declaratory judgment action and keep[ing] the lawsuit secret as a negotiating tool and method to preempt the defendant's choice of forum when it later files suit." Id. at *5.

The Court finds that there are no compelling circumstances to deviate from the first-filed rule here. HHT did not rush to the courthouse to file its lawsuit when it was on notice that J&M was imminently going to file suit. J&M waited over two months after suit was filed in Minnesota before it filed its Complaint in the Northern District of West Virginia. HHT has outlined several reasons why declaratory relief is necessary in this case, namely to determine whether they lawfully terminated their business relationship with J&M and whether they violated federal laws in their dealings with J&M. Moreover, there is no evidence in the record that HHT acted in bad faith. As discussed above, Minnesota is the location of HHT's principal place of business and thus a natural forum for it to file its lawsuit against J&M. There is also no record evidence that HHT deceived J&M into believing that it would not initiate litigation if the parties were unable to reach an agreement without court intervention.

Accordingly, the Court chooses not to exercise its discretion to dismiss this action. HHT neither initiated this litigation as an improper preemptive strike nor engaged in forum shopping. Additionally, there is no parallel state proceeding and the case raises federal

10

questions. Finally, HHT filed its action first, and there are no compelling circumstances present that warrant an exception to the first-filed rule. Therefore, the Court, in its discretion, will retain jurisdiction over HHT's action.

## C. Motion to Dismiss for Failure to State a Claim

J&M next argues that the Court should dismiss HHT's Complaint under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. (J&M's Dismissal Mem. at pp. 8–9.) Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (2009) (citation omitted). It is not, however, a "probability requirement." Id. (citation omitted). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Several principles guide courts in determining whether a complaint meets this standard. First, the court must take the plaintiff's factual allegations as true and grant all reasonable inferences in favor of the plaintiff. Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009). This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action;" such allegations may properly be set aside. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. Id. (quoting Twombly, 550 U.S. at 557.) Finally, the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594.

To state a claim under the federal Declaratory Judgment Act, a plaintiff must allege facts showing "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972) (citation omitted). "The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action." Benjamin, 361 F.3d at 463.

Evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679.  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

J&M argues that HHT's Complaint "only alleges that HHT anticipates that J & M has claims against it and that it may be sued by J & M at some point in the future for those claims."  (J&M's Dismissal Mem. at pp. 9–10.)  J&M also argues that "HHT has failed to demonstrate any immediate threat to its legal rights, other than the possibility that J & M might sue it for a set of largely undefined claims."  (Id. at p. 9.)

As discussed above, when J&M filed its Complaint in the Northern District of West Virginia, its claims against HHT were no longer "anticipated" or "largely undefined." Indeed, J&M's Complaint demonstrates that the parties have an actual dispute.  The Complaints in both jurisdictions dispute whether HHT acted lawfully during the term of the parties' relationship and whether HHT lawfully terminated the relationship between the parties.

The Court agrees with the Defendant, however, that the Complaint in this case fails to adequately identify the claims and defenses at issue.  The Complaint does not set forth the specific elements of the causes of action or defenses upon which it requests adjudication. For example, the Complaint does not discuss HHT's defenses to J&M's allegations that HHT violated the Sherman and Robinson-Patman Acts during its business relationship. Additionally, the Complaint cites to, but does not attach as exhibits, the letters from J&M upon which it bases this declaratory judgment action.

At the hearing on Defendant's Motion to Dismiss, Plaintiff requested that, if the Court determined that the Complaint did not adequately plead a cause of action or describe the issues to be resolved by the Court, that the Court allow it to amend its Complaint to cure any deficiencies. Leave to amend a complaint should be given freely "when justice so requires." Fed. R. Civ. P. 15(a). "Where a more carefully drafted complaint might state a claim upon which relief could be granted, the district court should allow the plaintiff to amend the complaint rather than dismiss it." Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995) (citation omitted). Since the deficiencies in HHT's Complaint can be remedied by including a more detailed description of the elements for its causes of action and its defenses to J&M's allegations as well as attaching the letters upon which it relies as exhibits, the Court grants HHT's request to file an amended complaint.

### D. Transferring Venue to the Northern District of West Virginia

In the alternative, J&M moves to transfer venue to the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a). (Doc. No. 14.) Section 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking a transfer ordinarily bears the burden of establishing that a transfer is warranted. Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir.1997). Initially, the moving party must show that the transferee district is one where venue would be proper. See 28 U.S.C. § 1391 (stating that an action can be brought in any district where a "substantial part of the events or omissions giving rise to the claim occurred").

14

Although the Eighth Circuit has declined to offer an "exhaustive list of specific factors to consider" in making the transfer decision, factors commonly evaluated include the convenience of the parties, the convenience of the witnesses, and the interests of justice. Terra Int'l, 119 F.3d at 691. Courts recognize a presumption favoring the forum chosen by a plaintiff, when the plaintiff resides in the same district as the lawsuit was filed. Travel Tags, Inc. v. Performance Printing Corp., 636 F. Supp. 2d 833, 836 (D. Minn. 2007). Moreover, a motion to transfer an action to another district should be denied unless the balance of factors strongly favors the moving party. See Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn.1999).

J&M argues that venue is proper in the Northern District of West Virginia because a substantial part of the events giving rise to its claims occurred in that judicial district. (J&M's Mem. in Supp. of Mot. to Transfer Venue, Doc. No. 16 ("J&M's Transfer Mem."), at p. 9.) J&M also claims that the Northern District of West Virginia is a more convenient forum. (Id. at pp. 8–14.) J&M asserts that West Virginia will be more convenient for non-party witnesses, such as employees of its Pennsylvania competitor who it has alleged received preferential treatment. (Id. at pp. 8–9.) J&M further claims that "[p]otentially critical sources of proof are . . . physically located in West Virginia and the adjoining State of Pennsylvania." (Id. at p. 9.) J&M also claims that it "[has] limited financial means to litigate the case in Minnesota" as compared to HHT that "has the means to litigate this case in any venue." (Id. at p. 12.) Finally, J&M asserts that West Virginia law will apply to certain claims in this action and the Northern District of West Virginia is more familiar with the application of that law. (Id. at p. 13.)

HHT responds that it is headquartered in Minnesota and hence Minnesota is a more convenient forum for its employees. (HHT's Mem. in Opp'n to J&M's Mot. to Transfer Venue. Doc. No. 22, ("HHT's Transfer Opp'n"), at p. 11.) Moreover, HHT specifically identifies two third-party witnesses who are located in Minnesota who will be necessary witnesses at trial. (Id. at pp. 13–15.) HHT also identifies three witnesses who do not live in Minnesota but for whom Minnesota would be a more convenient forum. (Id.) Furthermore, HHT submits an affidavit by its distributor, named in the West Virginia Action, in which the distributor consents to the jurisdiction of this Court and agrees to be named a party in this action. (Aff. of Mike Buckiso, Doc. No. 29, ¶ 3.)[2]

HHT further claims that J&M's generalized assertions regarding its potential witnesses, without identifying them or providing their expected testimony, is insufficient to carry its burden on a motion to transfer venue. (Id. at pp. 16–17.) HHT relies on Residential Funding Corp. v. Anvil Funding Corp., where the defendant moved to transfer venue to California, arguing that they expected testimony from "several current or former [e]mployees of [it] with specific knowledge of the relationship and course of dealing with [plaintiff]" who resided in California. No. 04-3043, 2005 WL 1323940, at *7 (D. Minn. June 3, 2005). Defendant in Residential Funding also claimed that "it may be necessary for various third parties" involved in the action, who were also California

---

[2] J&M argues that the Court should not consider Mike Buckiso's affidavit because the Court lacks subject matter jurisdiction over this action and the complaint fails to state a claim upon which relief can be granted. (J&M's Letter Br., Doc. No. 32, at p. 1) As discussed above, the Court determines that it has jurisdiction over this action and that the complaint states a valid claim under the Declaratory Judgment Act and therefore will consider Mr. Buckiso's affidavit in the context of this motion.

16

residents, to testify.  Id.  This Court denied the motion to transfer venue because the sparse descriptions of the anticipated witnesses did "not provide sufficient information to allow the Court to weigh its materiality and importance."  Id. at *8.

As in Residential Funding, the Court determines that J&M has failed to carry its burden to demonstrate that the Court should transfer venue to West Virginia.  J&M failed to specifically identify witnesses, particularly third-party witnesses, who would be inconvenienced by having this case proceed in Minnesota.  Moreover, even if J&M could show that venue would be proper in the Northern District of West Virginia, J&M has not satisfied its burden of showing that the balance of the § 1404(a) factors favors transferring the case.  Each of J&M's § 1404(a) arguments in favor of transferring venue to the Northern District of West Virginia apply with equal force to HHT.  For example, J&M argues that the Northern District of West Virginia is a more convenient venue because all of its witnesses and evidence are located there.  It is more convenient for HHT to try its case in Minnesota, however, because all of its witnesses and evidence are located here.  Indeed, "Defendant['s] motion to transfer this case would merely shift the inconvenience to Plaintiff."  ComputerUser.com, Inc. v. Tech. Publ'ns, LLC, No.  Civ. 02-832, 2002 WL 1634119, at *8 (D. Minn. July 20, 2002).

For all of these reasons, the Court finds that J&M has not carried its heavy burden of showing that the balance of § 1404(a) factors favors transferring this case.

### IV. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. J&M's Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. 8) is **DENIED**;

2. J&M's Motion that the Court dismiss the Complaint in its discretion under the Declaratory Judgment Act (Doc. No. 8) is **DENIED**;

3. J&M's Motion to Dismiss for failure to state a claim (Doc. No. 8) is **DENIED** and the Court **GRANTS** HHT's oral motion to amend its Complaint within thirty (30) days of this Order; and

4. J&M's alternative Motion to Transfer Venue to the Northern District of West Virginia (Doc. No. 14) is **DENIED**.

Dated: November 30, 2012         s/Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States District Judge